**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BRITTANY HUNTER,** **DOMINIQUE ANGLIN,** and **ALESHA CHAMPEN** *on behalf of themselves and others similarly situated*, **Plaintiffs,** - against - **WHITE CASTLE SYSTEM INC.,** **Defendant.** | Case No.: 21-cv-2273(ER)(KHP) **FIRST AMENDED CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |

Plaintiffs BRITTANY HUNTER, DOMINIQUE ANGLIN and ALESHA CHAMPEN ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this First Amended Class Action Complaint against Defendant WHITE CASTLE SYSTEM INC. (the "Defendant") and allege as follows:

**INTRODUCTION**

1.     Plaintiffs bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, and Rule 23 of the

Federal Rules of Civil Procedure ("Rule 23"), seeking from Defendant: (1) unreimbursed uniform maintenance pay, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiffs BRITTANY HUNTER and DOMINIQUE ANGLIN also bring this action on behalf of themselves pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendant engaged in discriminatory employment practices on the basis of sexual harrassment discrimination, subjected Plaintiffs BRITTANY HUNTER and DOMINIQUE ANGLIN to a hostile work environment, and retaliated against Plaintiff BRITTANY HUNTER for speaking out and encouraging others to file complaints regarding Defendant's discriminatory practices, and seek to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

3.    Plaintiff ALESHA CHAMPEN also bring this action on behalf of herself pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendant engaged in discriminatory employment practices on the basis of pregnancy discrimination and failed to provide reasonable accommodations, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## ADMINISTRATIVE PREREQUISITES

4.    Pursuant to New York City Human Rights Law, Administrative Code of the City of New York § 8-502(c), Plaintiffs served a copy of the Complaint upon the New York City

Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten (10) days of the filing of the initial complaint on February 8, 2021.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction. On or about March 16, 2021, Defendant filed their Notice of Removal from the Supreme Court of New York, County of Bronx, to the United States District Court, Southern District of New York, on the basis that (1) Plaintiffs are citizens of the State of New York and Defendant is a citizen of the State of Ohio and (2) Plaintiffs alleged damages in excess of $75,000.00. *See* Dkt. No. 1, ¶¶ 5-8 and 12 (Defendant's Notice of Removal).

6.  Jurisdiction is proper in the State of New York because the events giving rise to the causes of action herein took place in the State of New York.

7.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

### *Plaintiffs*

### *BRITTANY HUNTER*

8.  Plaintiff BRITTANY HUNTER is an adult who resides in Bronx County, New York.

9.  Plaintiff BRITTANY HUNTER was a covered employee within the meaning of the NYLL.

10.  Plaintiff BRITTANY HUNTER retained Brown Kwon & Lam, LLP to represent Plaintiffs in this action and have agreed to pay the firm a reasonable fee for its services.

***DOMINIQUE ANGLIN***

11.     Plaintiff DOMINIQUE ANGLIN is an adult who resides in Bronx County, New York.

12.     Plaintiff DOMINIQUE ANGLIN was a covered employee within the meaning of the NYLL.

13.     Plaintiff DOMINIQUE ANGLIN retained Brown Kwon & Lam, LLP to represent Plaintiffs in this action and have agreed to pay the firm a reasonable fee for its services.

***ALESHA CHAMPEN***

14.     Plaintiff ALESHA CHAMPEN is an adult who resides in Bronx County, New York.

15.     Plaintiff ALESHA CHAMPEN was a covered employee within the meaning of the NYLL.

16.     Plaintiff ALESHA CHAMPEN retained Brown Kwon & Lam, LLP to represent Plaintiffs in this action and have agreed to pay the firm a reasonable fee for its services.

## ***Defendant***

17.     At all relevant times, Defendant owned and operated an enterprise under the tradename "White Castle," in the State of New York, comprised of thirty-one (31) restaurants in New York, at the following locations:

    a.     2201 Middle Country Road, Centereach, New York;

    b.     2237 Jericho Turnpike, Commack, New York;

    c.     1690 Deer Park Avenue, Deer Park, New York;

    d.     265 Broadhollow Road, Farmingdale, New York;

    e.     6207 Sunrise Highway, Massapequa, New York;

f.  19 Hempstead Turnpike, West Hempstead, New York;

g.  490 Sunrise Highway, Lynbrook, New York;

h.  213-17 Northern Boulevard, Bayside, New York;

i.  112-11 Springfield Boulevard, Queens, New York;

j.  175-28 Hillside Avenue, Queens, New York;

k.  9808 Rockaway Boulevard, Ozone Park, New York;

l.  89-03 57th Avenue, Elmhurst, New York;

m.  88-08 Northern Boulevard, Jackson Heights, New York;

n.  43-02 Queens Boulevard, Sunnyside, New York;

o.  1545 Myrtle Avenue, Brooklyn, New York;

p.  3101 Atlantic Avenue, Brooklyn, New York;

q.  900 Pennsylvania Avenue, Brooklyn, New York;

r.  846 Lefferts Boulevard, Brooklyn, New York;

s.  2221 Hylan Boulevard, Staten Island, New York;

t.  2238 Forest Avenue, Staten Island, New York;

u.  351 E 103rd Street, New York, New York;

v.  2092-2094 7th Avenue, New York, New York;

w.  931 Westchester Avenue, Bronx, New York;

x.  1677 Bruckner Boulevard, Bronx, New York;

y.  550 E Fordham Road, Bronx, New York;

z.  2701 Boston Road, Bronx, New York;

aa. 1831 Webster Avenue, Bronx, New York;

bb. 2900 E Tremont Avenue, Bronx, New York;

cc. 3663 Boston Road, Bronx, New York;

dd. 257 S Broadway, Yonkers, New York;

ee. 136 W Route 59, Nanuet, New York;

(collectively, the "New York White Castle Restaurants").

18.     At all relevant times, Defendant owned and operated all New York White Castle Restaurants as a single integrated enterprise. Specifically, Defendant had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

19.     At all relevant times, employees, food, and supplies were interchangeable and regularly transferred among New York White Castle Restaurants. In fact, Plaintiff BRTITTANY HUNTER worked interchangeably among different New York White Castle Restaurants.

20.     At all relevant times, New York White Castle Restaurants were operated under the same wage and hour policies.

21.     At all relevant times, Defendant utilized uniform training and orientation materials, including employee handbooks at all New York White Castle Restaurants.

22.     At all relevant times, Defendant operated with the same uniform and uniform policies across all New York White Castle Restaurants.

23.     At all relevant times, Defendant hired and continues to hire employees through the White Castle webpage at https://careers.whitecastle.com/#job-opps. Job searches are centralized through Defendant's webpage and employees may apply to specific positions and locations listed on their webpage.

24.     At all relevant times, Defendant administered payroll to employees among all New York White Castle Restaurants through Defendant WHITE CASTLE SYSTEM INC.

25.     At all relevant times, White Castle does not franchise their business, and is family owned and operated and/or closely owned and operated by related individuals.

26.     At all relevant times, Defendant jointly employed Plaintiffs and similarly situated employees.

27.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     At all relevant times, Defendant was and continue to be an employer within the meaning of the NYLL.

### White Castle System, Inc.

29.     Defendant WHITE CASTLE SYSTEM, INC. is a foreign business corporation organized under the laws of the State of Ohio with a principal place of business located at 555 Edgar Waldo Way, Columbus, Ohio 43215, and an address for service of process located at c/o Corporate Creations Network Inc., 15 North Mill Street, Nyack, New York 10960.

30.     At all relevant times, Defendant operated New York White Castle Restaurants through Defendant WHITE CASTLE SYSTEM, INC.

31.     Defendant WHITE CASTLE SYSTEM, INC is a covered "employer" within the meaning of the NYLL.

32.     Defendant WHITE CASTLE SYSTEM, INC. employed Plaintiffs and similarly situated employees.

33.     At all relevant times, Defendant WHITE CASTLE SYSTEM, INC. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

34.     At all relevant times, Defendant WHITE CASTLE SYSTEM, INC. applied the same employment policies, practices, and procedures to all non-exempt employees among the New York White Castle Restaurants.

## NEW YORK CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring the First Cause of Action and the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt employees who were required to wear uniforms while employed at any of the New York White Castle Restaurants owned, operated, and/or controlled by Defendant, from the date that is six (6) years prior to the filing of this Class Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

36.     Excluded from the Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

37.     Plaintiffs are members of the Class.

38.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendant's payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendant's records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendant's records. Notice can be provided by means permissible under Rule 23.

39.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the

facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

40.     Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

41.     Plaintiffs and Class Members were subject to the same practices of Defendant, as alleged herein, of (i) failing to pay uniform maintenance pay, (ii) failing to provide proper wage notices, and (iii) failing to provide proper wage statements, in violation of the NYLL.

42.     Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

43.     Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

44.     Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

45.     Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

46.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

47. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

48. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

49. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

50.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

a. Whether Defendant employed Plaintiffs and Class Members within the meaning of the NYLL;

b. Whether Plaintiffs and Class Members were required to wear uniforms;

c. Whether Defendant maintained required uniforms for Plaintiffs and Class Members;

d. Whether Defendant paid Plaintiffs and Class Members their weekly uniform maintenance pay at the statutorily set rates;

e. Whether Defendant's required uniforms were made of "wash and wear" materials;

f. Whether Defendant's required uniforms may be routinely washed and dried with other personal garments;

g. Whether Defendant's required uniforms required ironing, dry cleaning, daily washing, commercial laundering, or other special treatment;

h. Whether Defendant provided and furnished Plaintiffs and Class Members with a sufficient number of uniforms, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee;

i. Whether Defendant offered to launder uniforms free of charge with reasonable frequency, and if so, whether they (i) ensured the availability of an adequate supply of clean, properly-fitting uniforms, and (ii) informed Plaintiffs and Class Members individually in writing of such service;

j. Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, as required by the NYLL; and

k. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, required by the NYLL.

## STATEMENT OF FACTS

### *BRITTANY HUNTER*

51.     In or around March 2015, Plaintiff BRITTANY HUNTER was hired by Defendant to work as a team member at one of its New York White Castle Restaurants, located at 1677

Bruckner Boulevard, Bronx, New York. Approximately two months after her hire, Plaintiff BRITTANY HUNTER was promoted to a certified trainer. In or around October 2016, Plaintiff BRITTANY HUNTER was promoted to a day shift manager. In or around September 2020, Plaintiff BRITTANY HUNTER was informed that they were going to demote her in retaliation for her prior sexual harassment complaints and for encouraging other female employees to report sexual harassment. In or around December 2020, Plaintiff's demotion was finalized and she was demoted to certified trainer and her pay was reduced. In or around the end of February 2021, Plaintiff BRITTANY HUNTER constructively terminated her employment with Defendant.

52.     At all times, while employed as either a certified trainer or a shift manager, Plaintiff BRITTANY HUNTER did not have the authority to hire or fire, discipline, promote, supervise or control other employees. Plaintiff BRITTANY HUNTER did not manage operations and had no authority over personnel or payroll decisions or employment policies, practices and procedures at White Castle.

53.     Throughout Plaintiff BRITTANY HUNTER's employment, although she was based at 1677 Bruckner Boulevard, Bronx, New York, she was occasionally sent to work at other Bronx locations of New York White Castle Restaurants. Specifically, Plaintiff BRITTANY HUNTER additionally worked at the following locations: (i) 550 E Fordham Road, Bronx, New York, (ii) 3663 Boston Road, Bronx, New York, and (iii) 1831 Webster Avenue, Bronx, New York. At all times, Plaintiff was compensated by Defendant WHITE CASTLE SYSTEM INC. regardless of which New York White Castle Restaurant she worked at and she was merely required to input her employee identification number at each location. At all relevant times, Plaintiff did not receive additional training when she was temporarily transferred to work at a different White Castle location. At all relevant times, Plaintiff wore the same White Castle issued uniform, regardless of

which location she was assigned to work. At all relevant times, Plaintiff did not receive a different uniform when she worked at different New York White Castle Restaurants.

54. From in or around March 2015 through mid-March 2020, Plaintiff BRITTANY HUNTER regularly worked five (5) days per week, from 3:00pm to 11:00pm, for a total of approximately forty (40) hours per week. From in or around March 2015 through March 2020, Plaintiff BRITTANY HUNTER worked without any meal breaks.

55. From in or around mid-March 2020 through July 2020, Plaintiff BRITTANY HUNTER regularly worked six (6) days per week, from 3:00pm to 11:00pm, for a total of approximately forty-eight (48) hours per week. From in or around mid-March 2020 through July 2020, Plaintiff BRITTANY HUNTER worked without any meal breaks.

56. From in or around August 2020 through December 2020, Plaintiff BRITTANY HUNTER regularly worked four (4) days per week, from 3:00pm to 11:00pm, for a total of approximately thirty-two (32) hours per week. From in or around August 2020 through December 2020, Plaintiff BRITTANY HUNTER worked without any meal breaks.

57. Starting in or around the end of December 2020, Plaintiff BRITTANY HUNTER's schedule was reduced and she regularly worked three (3) days per week, working Sundays, Mondays and Fridays, from 3:00pm to 11:00pm, for a total of approximately twenty-four (24) hours per week. At all relevant times, Plaintiff BRITTANY HUNTER worked without any meal breaks.

58. From in or around March 2015, Defendant compensated Plaintiff BRITTANY HUNTER at a rate of $15.00 per hour. From in or around October 2016, Plaintiff BRITTANY HUNTER received a raise to $18.00 per hour upon her promotion to a day shift manager. As of December 12, 2020, Plaintiff BRITTANY HUNTER was compensated at a rate of $19.67 per

hour. However, in or around the end of December 2020, Defendant formally demoted Plaintiff BRITTANY HUNTER to a rate of $17.50 per hour in retaliation for her sexual harassment complaints and her encouragement of other employees to report workplace discriminatory practices.

59.     At all relevant times, Plaintiff BRITTANY HUNTER was required to work with a White Castle issued uniform. Upon hiring, Plaintiff BRITTANY HUNTER received only one (1) set of Defendant's uniform, which consisted of one shirt with the White Castle logo, one apron, and one hat. Throughout her employment with Defendant, Plaintiff BRITTANY HUNTER would receive a new White Castle shirt only when her prior uniform was faded in color. At all times, Plaintiff was required to launder her uniform on a regular basis due to the smell and grease stains. At all times, Plaintiff was unable to wash and dry her White Castle uniform with her personal garments due to the smell and grease stains. Even after Plaintiff's initial hire, Plaintiff at most only had 2 shirts, 1 apron and 1 hat at any given time.

### *DOMINIQUE ANGLIN*

60.     In or around November 2017, Plaintiff DOMINIQUE ANGLIN was hired by Defendant to work as a team member at one of its New York White Castle Restaurants, located at 1677 Bruckner Boulevard, Bronx, New York. Plaintiff DOMINIQUE ANGLIN worked for Defendant until in or around mid-March 2020 and temporarily stopped working for Defendant after mid-March 2020 due to the COVID-19 pandemic. Plaintiff DOMINIQUE ANGLIN then worked for Defendant between September 2020 and October 2020. Plaintiff DOMINIQUE ANGLIN terminated her employment with Defendant in or around October 2020.

61.     At all relevant times, although Plaintiff DOMINIQUE ANGLIN was trained for all team member positions, she predominantly worked as a cashier.

62.     From in or around November 2017 through mid-March 2020, Plaintiff DOMINIQUE ANGLIN regularly worked four (4) to five (5) days per week, from either 3:00pm to 11:00pm or 5:00pm to 11:00pm, for a total of approximately twenty-four (24) to forty (40) hours per week.  From in or around September 2020 through October 2020, Plaintiff DOMINIQUE ANGLIN regularly worked one (1) day per week, for approximately six (6) to eight (8) hours per workday. At all relevant times, Plaintiff DOMINIQUE ANGLIN worked without any breaks.

63.     At all relevant times, Plaintiff DOMINIQUE ANGLIN was compensated by Defendant at a rate of $15.00 per hour.

64.     At all relevant times, Plaintiff DOMINIQUE ANGLIN was required to work with a White Castle issued uniform. Upon hiring, Plaintiff DOMINIQUE ANGLIN received two (2) shirts with the White Castle logo, one apron, and one hat. Throughout her employment with Defendant, even though she was informed that she would receive additional shirts and she requested for additional shirts, Plaintiff DOMINIQUE ANGLIN would receive a new White Castle shirt only when her prior shirt was faded in color or unwearable due to stains. At all times, Plaintiff was required to launder her uniform on a regular basis due to the smell and grease stains. At all times, Plaintiff was unable to wash and dry her White Castle uniform with her personal garments due to the smell and grease stains. At any given time throughout Plaintiff DOMINIQUE ANGLIN's employment, Plaintiff at most only had 2 shirts, 1 apron and 1 hat.

65.     Based on Plaintiff DOMINIQUE ANGLIN's conversation with other co-workers required to wear a White Castle issued uniform, all employees had to wash their uniforms separate from their personal garments due to the smell and grease and complained that they were not given enough pieces of uniform for the whole week of work.

*ALESHA CHAMPEN*

66.     In or around January 2019, Plaintiff ALESHA CHAMPEN was hired by Defendant to work as a team member at one of its New York White Castle Restaurants, located at 1677 Bruckner Boulevard, Bronx, New York. Upon hiring, Plaintiff ALESHA CHAMPEN was informed that she would work as a cashier. Plaintiff ALESHA CHAMPEN worked for Defendant until in or around March 2019 before she was constructively terminated on the basis of her pregnancy.

67.     From in or around January through March 2019, Plaintiff ALESHA CHAMPEN regularly worked five (5) days per week, working eight (8) hours per shift, for a total of approximately forty (40) hours per week. At all relevant times, when Plaintiff ALESHA CHAMPEN's weekly hours worked approached forty (40) hours per week, Defendant had a policy of ending Plaintiff's shift so as to avoid compensating her at an overtime rate. At all relevant times, Plaintiff ALESHA CHAMPEN worked at least over thirty (30) hours per week.

68.     At all relevant times, Plaintiff ALESHA CHAMPEN was compensated by Defendant at a rate of $15.00 per hour.

69.     At all relevant times, Plaintiff ALESHA CHAMPEN was required to work with a White Castle issued uniform. Upon hiring, Plaintiff ALESHA CHAMPEN received only one (1) set of Defendant's uniform, which consisted of one shirt with the White Castle logo, one apron, and one hat. Upon hiring, Plaintiff ALESHA CHAMPEN was informed that she would receive enough uniforms for the week, but when she requested for additional uniforms beyond her single set, Defendant refused to provide additional uniforms. At all times, Plaintiff was required to launder her uniform on a daily basis due to the smell and grease stains. At all times, Plaintiff was

unable to wash and dry her White Castle uniform with her personal garments due to the smell and grease stains.

70. Based on Plaintiff ALESHA CHAMPEN's conversation with other co-workers required to wear a White Castle issued uniform, all employees had to wash their uniforms separate from their personal garments due to the smell and grease, complained that they were not given enough uniforms for the whole week of work, and had to launder their uniform multiple times per week in order to have a clean uniform for work. Plaintiff ALESHA CHAMPEN and her co-workers regularly complained of the uniform issue in the locker rooms.

71. At all relevant times, Plaintiffs and Class Members did not receive proper notices of pay rate or pay day from Defendant at hire or before the changes in pay, as required under the NYLL.

72. At all relevant times, Plaintiffs and Class Members did not receive proper wage statements from Defendant. Specifically, Defendant's wage statements that were provided to Plaintiffs and Class Members did not state their uniform maintenance pay.

73. At all relevant times, Plaintiffs and Class Members were required to work with White Castle issued uniforms. Defendant did not and does not maintain required uniforms on behalf of Plaintiffs and Class Members and do not offer to launder the required uniforms. At all relevant times, Defendant did not pay Plaintiffs and Class Members their weekly uniform maintenance pay. At all times, Defendant's White Castle issued uniforms cannot be considered "wash and wear material." At all relevant times, Defendant's required uniforms required daily, regular washing due to the nature of Defendant's fast food restaurant. At all relevant times, Defendant's required uniforms required separate washing from Plaintiff's and Class Member's personal garments due to the smell and grease on Defendant's uniform after a workday. At all

times, Defendant failed to furnish Plaintiff and Class Members with a sufficient number of uniforms consistent with the average number of days per week worked by each employee. At all relevant times, at any given time, Plaintiffs and Class Members only possessed 1-2 shirts, one apron and one hat. Defendant does not maintain records of the number of uniforms provided to Plaintiffs and Class Members. At all times, Defendant had a policy of sending Plaintiffs and Class Members home when they did not have on a clean uniform.

74.     Based on Plaintiff's observations and conversations with co-workers, Defendant applied the same policies and practices at all New York White Castle Restaurants. Employees at New York White Castle Restaurants were and are interchangeable. Defendant applied the same policies and practices at all New York White Castle Restaurants. Plaintiff BRITTANY HUNTER worked interchangeably among several locations owned and operated by Defendant.

75.     As a result of Defendant's improper uniform maintenance policies and practices, Plaintiffs and Class Members at all New York White Castle Restaurants were not paid their proper uniform maintenance pay for every workweek.

76.     Defendant knowingly and willfully operated their business with a policy of failing to pay uniform maintenance pay to Plaintiffs and Class Members, in violation of the NYLL.

77.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

78.     Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and Class Members pursuant to the requirements of the NYLL.

### BRITTANY HUNTER – Sexual Harassment and Retaliation

79.　　In or around July 2018, at the end of Plaintiff BRITTANY HUNTER's shift one evening at or around 11:00pm, another shift manager, Kenneth Hamilton pulled down Plaintiff BRITTANY HUNTER's pants in front of the freezer section of the restaurant.

80.　　Plaintiff BRITTANY HUNTER reported the sexual harassment to the general manager, Ms. Ismeta Lekovic, also known as "Ms. Diane," (referred hereinafter as Ms. Diane).

81.　　However, Ms. Diane did not take Plaintiff BRITTANY HUNTER's complaint seriously. Ms. Diane and the district manager, Ms. Alicia "Last Name Unknown," (referred hereinafter as Ms. Alicia), investigated the allegations and questioned Mr. Hamilton. During a meeting with Ms. Diane and Ms. Alicia, they joked around and informed Plaintiff BRITTANY HUNTER that Mr. Hamilton informed them that "he was just playing." Ms. Alicia further informed Plaintiff BRITTANY HUNTER that "you do wear tight clothes." Mr. Hamilton was not punished and faced no repercussions following the sexual harassment. Mr. Hamilton was neither fired nor even suspended. Mr. Hamilton continued to be employed with Plaintiff BRITTANY HUNTER for two (2) years thereafter. Both Ms. Diane and Ms. Alicia were general managers and oversaw operations at the White Castle located at 1677 Bruckner Boulevard, Bronx, New York.

82.　　This was not the first reported sexual harassment incident related to Mr. Hamilton. Prior to Plaintiff BRITTANY HUNTER reporting this sexual harassment to Ms. Diane, Plaintiff DOMINIQUE ANGLIN also reported that she was sexually harassed by Mr. Hamilton. At the time of the reported complaint, Ms. Diane plainly informed Plaintiff DOMINIQUE ANGLIN that she did not believe Plaintiff DOMINIQUE ANGLIN's report of sexual harassment against Mr. Hamilton.

83.     Due to Defendant's refusal to address any of the sexual harassment perpetuated by Mr. Hamilton, and Ms. Diane and Ms. Alicia's history of disregarding female employees' complaints of sexual harassment, Defendant fostered a sexually hostile work environment. Defendant subjected Plaintiff BRITTANY HUNTER to a continual sexually hostile work environment, where she spent two (2) years avoiding contact with Mr. Hamilton who continued to make attempts to prey on her. Plaintiff BRITTANY HUNTER suffered from severe stress and anxiety, stress-induced insomnia, and had a general fear of men.

84.     Following Plaintiff BRITTANY HUNTER's report of Mr. Hamilton's sexual harassment in or around August 2018, Mr. Hamilton continued his behavior and sexually harassed other female employees at the workplace. For example, Mr. Hamilton would regularly pinch and touch female employees or he would stand closely behind a female employee while they were in front of the freezer. This happened pervasively and many of the female employees did not report it to Ms. Diane and Ms. Alicia because Plaintiffs DOMINIQUE ANGLIN and BRITTANY HUNTER had reported their complaints of sexual harassment with no response from upper management.

85.     Finally, in or around Summer 2020, one of the female employees complained to Plaintiff BRITTANY HUNTER that Mr. Hamilton touched a private body part. Plaintiff BRITTANY HUNTER told her that she should not report it to Ms. Diane and Ms. Alicia because they would not do anything, and that she should report it higher up. The female employee then reported it to Susie "Last Name Unknown," the Regional Director, who oversaw several of the New York White Castle Restaurants. Mr. Hamilton was finally investigated and terminated thereafter.

86.     On or about August 21, 2020, prior to Mr. Hamilton's termination at the end of August 2020, Plaintiff BRITTANY HUNTER and Kiara Harmon met with Ms. Diane regarding sexual harassment complaints against Mr. Hamilton. Ms. Diane once again informed Plaintiff and Ms. Harmon that Mr. Hamilton was "a good worker" and that she "didn't want to lose him." Ms. Diane told Plaintiff BRITTANY HUNTER and Ms. Harmon that they only complained that Mr. Hamilton was touching their "elbows." This was clearly false as Plaintiff BRITTANY HUNTER had informed Ms. Diane that Mr. Hamilton had previously pulled off her pants at work. At or around the same time, Plaintiff BRITTANY HUNTER saw a report on Ms. Diane's desktop that Plaintiff BRITTANY HUNTER and Ms. Harmon had complained that Mr. Hamilton was touching their elbows, when Plaintiff BRITTANY HUNTER's prior complaints against Mr. Hamilton were much more severe. Ms. Diane downplayed and tried to minimize the sexual harassment complaints made by Plaintiff BRITTANY HUNTER and other female employees.

87.     Following Mr. Hamilton's termination on or about August 29, 2020, Ms. Diane and Ms. Alicia blamed Plaintiff BRITTANY HUNTER for the loss of Mr. Hamilton due to her role in encouraging other female employees to file their sexual harassment complaints above Ms. Diane and Ms. Alicia. They retaliated against Plaintiff BRITTANY HUNTER by giving her scheduling problems and then they ultimately demoted her.

88.     Starting in or around August 2020, Plaintiff had requested to reduce her work schedule to four (4) days a week, which was granted without any issues. Starting in or around September 2020, following Mr. Hamilton's termination, Ms. Diane and Ms. Alicia informed Plaintiff that she would be demoted due to Plaintiff's inability to work five (5) days per week. Defendant did not have a policy of requiring their shift managers to work a requisite number of days. Other shift managers were previously employed at White Castle without working a full five

(5) days. Plaintiff's request to work one day less per week was granted without any issues prior to Mr. Hamilton's termination and only became problematic after he was terminated.

89.     A week prior to on or about November 30, 2020, Plaintiff informed Ms. Diane that she was unable to work a specific day due to a medical appointment. Plaintiff had provided adequate notice, but the following week when she took the day off for her medical appointment, Ms. Diane retaliated and took her off the schedule for the week. Ms. Diane also wrote Plaintiff BRITTANY HUNTER up in retaliation, writing that Plaintiff BRITTANY HUNTER failed to provide adequate notice for taking a day off, even though Plaintiff BRITTANY HUNTER told her the week before. Ms. Alicia further admonished Plaintiff BRITTANY HUNTER and blamed her for Mr. Hamilton's termination by telling her "why are you doing this to your boss, Kenneth is gone, you know she is injured," referring to Ms. Diane as Plaintiff BRITTANY HUNTER's boss, insinuating that Plaintiff BRITTANY HUNTER was creating problems.

90.     In or around the last week of December 2020, Defendant officially demoted Plaintiff BRITTANY HUNTER. Plaintiff BRITTANY HUNTER's pay rate was reduced from $19.67 per hour to $17.50 per hour, she was listed as a certified trainer, instead of a shift manager, and her workdays were reduced from four (4) days per week to three (3) days per week.

91.     Plaintiff BRITTANY HUNTER's demotion was retaliatory because White Castle had a policy that required at least one (1) shift manager per shift. At any given time, "manager 1," a position paid at approximately $19.00 per hour, was the main shift manager, and "manager 2," on the same shift would then be paid between $17.00 and $18.00 per hour; however, if a "manager 1" was not assigned to the shift, and "manager 2" ran the shift instead of a "manager 1," then "manager 2" would be paid an additional one dollar per hour. In all her shifts following her

demotion, Plaintiff BRITTANY HUNTER was the only "shift manager" scheduled during her shifts, but she was labeled as a "certified trainer" and paid at a reduced rate.

92.     Due to Defendant's retaliation, Plaintiff continues to suffer from economic loss and emotional distress, stress and anxiety.

### *DOMINIQUE ANGLIN – Sexual Harassment*

93.     In or around early 2018, Kenneth Hamilton subjected Plaintiff DOMINIQUE ANGLIN to harassment and a sexually hostile work environment. Mr. Hamilton would regularly pinch and squeeze the back of Plaintiff's arms and her stomach, such that she would have nail marks covering her arms where he broke into her skin.

94.     In or around Spring 2018, Plaintiff DOMINIQUE ANGLIN complained to Ms. Diane regarding Mr. Hamilton's harassment and unwanted physical touching. When Plaintiff DOMINIQUE ANGLIN reported it to Ms. Diane, Ms. Diane responded that she did not believe her and that Kenneth Hamilton worked there for a long time and was a good employee.

95.     Plaintiff DOMINIQUE ANGLIN did not report the continued sexual harassment and unwanted physical touching thereafter since she initially reported it to Ms. Diane, and Ms. Diane not only failed to address the harassment and unwanted physical touching, but Ms. Diane did not investigate the matter and told Plaintiff plainly that she did not believe Plaintiff DOMINIQUE ANGLIN.

96.     Throughout Plaintiff DOMINIQUE ANGLIN's employment prior to mid-March 2020, Mr. Hamilton continued to pinch and squeeze Plaintiff's arms and her stomach. At one point, Mr. Hamilton pinched Plaintiff DOMINIQUE ANGLIN until she bled. A shift manager, Shelise "Last Name Unknown," witnessed this and informed Plaintiff DOMINIQUE ANGLIN that she

"need[ed] to tell somebody." Plaintiff DOMINIQUE ANGLIN responded "who would I tell," as she already told Ms. Diane and Ms. Diane essentially told her to just "deal with it."

97. Mr. Hamilton targeted Plaintiff DOMINIQUE ANGLIN, Plaintiff BRITTANY HUNTER, and other female employees up until his termination on or about August 29, 2020, and subjected them to sexual harassment and a sexually hostile work environment.

98. Due to Defendant's refusal to address any of the sexual harassment perpetuated by Mr. Hamilton, and Ms. Diane's disregard of Plaintiff DOMINIQUE ANGLIN's complaint of sexual harassment, Defendant fostered a sexually hostile work environment. Defendant subjected Plaintiff DOMINIQUE ANGLIN to a continual sexually hostile work environment for over two (2) years. Plaintiff DOMINIQUE ANGLIN suffered from severe emotional distress and humiliation after complaining to her employer of sexual harassment, only to be told that Ms. Diane did not believe her and further subjected her to Mr. Hamilton's sexual harassment.

### *ALESHA CHAMPEN – Pregnancy and Failure to Accommodate*

99. In or around January 2019, when Plaintiff ALESHA CHAMPEN was initially hired to work for Defendant at their 1677 Bruckner Boulevard, Bronx, New York location, Defendant informed Plaintiff ALESHA CHAMPEN that she would be employed predominantly as a cashier.

100. At all relevant times, even though Plaintiff ALESHA CHAMPEN was informed that she was hired to work predominantly as a cashier, Defendant only assigned Plaintiff ALESHA CHAMPEN to work at the grill station. Throughout her entire employment, Plaintiff ALESHA CHAMPEN was only permitted to work the cashier position two (2) times.

101. In or around January 2019, shortly after Plaintiff ALESHA CHAMPEN was hired, Plaintiff ALESHA CHAMPEN discovered that she was pregnant and reported it to the shift managers, Kiara Harmon and Shelise "Last Name Unknown." Plaintiff asked that they reassign

her to work as a cashier, which was the position she was originally hired to work. Plaintiff ALESHA CHAMPEN requested that they reassign her due to her pregnancy. Plaintiff ALESHA CHAMPEN informed them that the strength of the smell over the grill made her nauseous because of her pregnancy and that she was vomiting throughout her shift into a garbage can next to the grill station. Plaintiff also requested that they reassign her to the cashier position because Plaintiff was burning herself on her stomach from leaning over the grill, an issue due to her shorter stature and her growing stomach.

102.    Shelise "Last Name Unknown," a shift manager, informed Plaintiff ALESHA CHAMPEN that she would forward Plaintiff's request to work the cashier position due to her pregnancy to Ms. Diane, the general manager. Neither Kiara Harmon or Shelise "Last Name Unknown" had the power to change Plaintiff ALESHA CHAMPEN's work assignment. The very next day, Plaintiff ALESHA CHAMPEN was still assigned to work at the grill station. Shelise informed Plaintiff ALESHA CHAMPEN that Ms. Diane responded that Plaintiff "couldn't be moved because everyone has to be on the grill."

103.    On one occasion, Plaintiff ALESHA CHAMPEN was scheduled to work both the overnight shift, and the following day shift. On that day, Plaintiff ALESHA CHAMPEN showed Ms. Diane the burn marks on her stomach and requested that she be moved to work at the cashier station because she was vomiting and nauseous from the grill smell due to her pregnancy and that the burn marks were dangerous for her pregnancy. Ms. Diane responded "I don't know what to tell you because everyone has to do the grill." Even after Ms. Diane witnessed Plaintiff ALESHA CHAMPEN vomiting that day, Ms. Diane refused to reassign her.

104.    A few weeks thereafter, in or around March 2019, Plaintiff ALESHA CHAMPEN was constructively terminated due to Defendant's refusal to provide an accommodation for her

pregnancy. Plaintiff ALESHA CHAMPEN was informed upon hiring that she would work predominantly in the cashier position. However, for approximately three (3) months, Plaintiff ALESHA CHAMPEN worked almost exclusively at the grill station, working in the cashier position for only two (2) times throughout the three-month period. Plaintiff received multiple burn marks on her stomach and was vomiting on a daily basis while assigned to work at the grill station. Plaintiff requested for an accommodation due to her pregnancy, but she was denied an accommodation. Defendant did not engage in any cooperative dialogue, or any individualized and interactive process, regarding Plaintiff ALESHA CHAMPEN's request for a reasonable accommodation. After approximately three months of this type of working condition without an accommodation, Plaintiff had no choice but to terminate her employment for the safety of her pregnancy.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AND THE CLASS
#### *Unpaid Uniform Maintenance Pay in Violation of the New York Labor Law*

105.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

106.    At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

107.    At all times, Defendants required Plaintiffs and the Class to wear a uniform for each work shift as a condition of their employment.

108.    At all relevant times, Defendant does not and did not maintain required uniforms on behalf of Plaintiffs and the Class pursuant to the NYLL.

109.    At all times, Defendant failed to compensate Plaintiffs and the Class with their uniform maintenance pay, in violation of the NYLL. Pursuant to the NYLL, the supporting New York State Department of Labor Regulations, the New York Hospitality Industry Wage Order, 12 N.Y.C.R.R., Part 146, Defendant is required to pay Plaintiffs and the Class a uniform maintenance pay.

110.    At all relevant times, Defendant's uniform was not made of "wash and wear" materials.

111.    At all relevant times, Defendant's uniform may not be routinely washed and dried with other personal garments.

112.    At all relevant times, Defendant's uniform required ironing, dry cleaning, daily washing, commercial laundering, or other special treatment.

113.    At all relevant times, Defendant failed to furnish Plaintiffs and the Class with a sufficient number of uniforms consistent with the average number of days worked per week.

114.    At all times, Defendant did not launder or offer to launder Plaintiffs' or the Classes' required uniforms, did not ensure the availability of an adequate supply of clean, properly-fitting uniforms, and did not inform Plaintiffs and the Class of such a service in writing.

115.    Plaintiffs and the Class spent time off-the-clock and money to regularly clean and maintain their uniforms consistent with the uniform appearance standards required by Defendant.

116.    Defendant failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

117.    As a result of Defendant's willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendant their unpaid uniform maintenance pay, liquidated damages,

reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS AND THE CLASS
#### *Statutory Damages in Violation of the New York Labor Law*

118.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

119.    At all times relevant, Plaintiffs and the Class have been employees of Defendant, and Defendant has been an employer of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

120.    Defendant failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

121.    Defendant failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable;

the number of hours worked, including overtime hours worked if applicable; deductions; and net wages. Specifically, Defendant's wage statement failed to include their uniform maintenance pay.

122. Defendant failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

123. As a result of Defendant's willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### THIRD CAUSE OF ACTION ON BEHALF OF
### PLAINTIFFS BRITTANY HUNTER AND DOMINIQUE ANGLIN
#### *Violation of the New York State Human Rights Law*
#### *(Sexual Harassment)*

124. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

125. Plaintiffs are employees and protected persons within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

126. Defendant violated Plaintiffs' statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices and subjecting Plaintiffs to disparate treatment, including a sexually hostile work environment and inferior terms, conditions, or privileges of employment, on the basis of her sex.

127. Defendant discriminated against Plaintiffs on the basis of their sex in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy an unlawfully discriminatory environment.

128. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

129. Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiffs' protected rights under the NYSHRL, for which they are entitled to an award of punitive damages.

130. Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of sex, Plaintiffs BRITTANY HUNTER and DOMINIQUE ANGLIN are entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

**FOURTH CAUSE OF ACTION ON BEHALF OF**
**PLAINTIFFS BRITTANY HUNTER AND DOMINIQUE ANGLIN**
***Violation of the New York City Human Rights Law***
***(Sexual Harassment)***

131. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

132. Plaintiffs are employees and protected persons within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

133. Defendant violated Plaintiffs' statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by treating them less well than Defendant's other employees on the basis of their sex. Defendant engaged in discriminatory employment practices and subjected Plaintiffs to a sexually hostile work environment on the basis of their sex.

134. Defendant discriminated against Plaintiffs on the basis of their sex in violation of the NYCHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy an unlawfully discriminatory environment.

135.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief

136.     Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiffs' protected rights under the NYCHRL, for which they are entitled to an award of punitive damages.

137.     As a result of Defendant's unlawful employment practice, Plaintiffs sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

138.     Due to Defendant's violations of the NYCHRL, namely, employment discrimination on the basis of sex, Plaintiffs are entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF BRITTANY HUNTER
### *Retaliation in Violation of the New York State Human Rights Law*

139.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

140.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

141.     Defendant retaliated against Plaintiff on the basis of her protected activity under the NYSHRL by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing scrutiny, and demoting Plaintiff, after she made an internal complaint regarding workplace sex

discrimination and sexual harassment and encouraged other female employees to exercise their protected rights under the NYSHRL.

142.　　As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

143.　　As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

144.　　Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

145.　　Due to Defendant's violations of the NYSHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its retaliatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF BRITTANY HUNTER
### *Retaliation in Violation of the New York City Human Rights Law*

146.　　Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

147.　　Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

148.     Defendant retaliated against Plaintiff on the basis of her protected activity under the NYCHRL by making Plaintiff's work more difficult, reprimanding Plaintiff, increasing scrutiny, and demoting Plaintiff, after she made an internal complaint regarding workplace sex discrimination and sexual harassment and encouraged other female employees to exercise their protected rights under the NYCHRL.

149.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

150.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

151.     Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

152.     Due to Defendant's violations of the NYCHRL, namely, retaliation against Plaintiff for participating in protected activity, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

**SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ALESHA CHAMPEN**
*Violation of the New York State Human Rights Law*
*(Pregnancy)*

153.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

154.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

155.     Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices, and subjecting Plaintiff to disparate treatment, including a hostile work environment based on her pregnancy, and ultimately constructively terminating her employment on the basis of her pregnancy.

156.     Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

157.     As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

158.     Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

**EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ALESHA CHAMPEN**
*Violation of the New York City Human Rights Law*
*(Pregnancy)*

159.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

160.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

161.    Defendant violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by treating her less well than Defendant's other employees on the basis of her pregnancy. Defendant engaged in discriminatory employment practices, subjected Plaintiff to a hostile work environment based on her pregnancy, and ultimately constructively terminated her employment on the basis of her pregnancy.

162.    Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

163.    As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

164.    Due to Defendant's violations of the NYCHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ALESHA CHAMPEN
### *Violation of the New York State Human Rights Law*
### *(Failure to Accommodate)*

165.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

166.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

167.     Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee." NYSHRL § 296(3)(a). Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her pregnancy. Defendant was aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that would not impose an undue hardship on Defendant's business, and Defendant refused to provide an accommodation for her.

168.     At minimum, Defendant was required to engage in an individualized and interactive process regarding Plaintiff's request for a reasonable accommodation but Defendant failed to do so.

169.     Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

170.    As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

171.    Due to Defendant's violations of the NYSHRL, namely, failure to reasonably accommodate Plaintiff's request for a pregnancy-related accommodation, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## TENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF ALESHA CHAMPEN
### *Violation of the New York City Human Rights Law*
### *(Failure to Accommodate)*

172.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

173.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

174.    Under the NYCHRL, "[i]t shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job." Administrative Code of the City of New York § 8-107(22)(a) and (28). Defendant violated Plaintiff's statutorily protected rights under the NYCHRL by being aware of and failing to reasonably accommodate Plaintiff's pregnancy-related accommodation request. Defendant was aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that

would not impose an undue hardship on Defendant's business, and Defendant refused to provide an accommodation for her.

175. At minimum, Defendant was required to engage in a "cooperative dialogue" regarding Plaintiff's request for a reasonable accommodation but Defendant failed to do so.

176. Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

177. As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

178. Due to Defendant's violations of the NYCHRL, namely, failure to reasonably accommodate Plaintiff's request for a pregnancy-related accommodation, Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
### *Violation of the New York City Human Rights Law*
### *(Supervisor Liability)*

179. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

180. Plaintiffs are employees and protected persons within the meaning of the NYCHRL and Defendant is a covered employer under the NYCHRL.

181. Under the NYCHRL, Administrative Code of the City of New York § 8-107 (13)(b), "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where:

(1)     The employee or agent exercised managerial or supervisory responsibility; or
(2)     The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
(3)     The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

182.     Here, Defendant is liable for the discriminatory conduct alleged herein as Defendant's employees who subjected Plaintiffs to disparate treatment and retaliation were supervisors and managers of Plaintiffs and exercised managerial and supervisory responsibilities over Plaintiffs. As such, employer knew of the discriminatory conduct and acquiesced such conduct.

183.     As a result of Defendant's unlawful employment practice, Plaintiffs sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

184.     Due to Defendant's violations of the NYCHRL, namely, employment discrimination on the basis of sex, sexual harassment, and pregnancy, Plaintiffs are entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, and the Class, respectfully request that this Court grant the following relief:

a.   Certification of this case as a class action pursuant to Rule 23;

b.   Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

c. An award to Plaintiffs and the Class representing unpaid uniform maintenance pay due under the NYLL;

d. An award to Plaintiffs and the Class of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

e. Statutory penalties to Plaintiffs and the Class for Defendants' failure to provide Plaintiffs and the Class with proper wage notices and wage statements, as required by the NYLL;

f. An award to Plaintiffs awarding relief for Defendants' discriminatory conduct, including, but not limited to economic, compensatory and punitive damages;

g. A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

h. Pre-judgment and post-judgment interest;

i. Reasonable attorneys' fees and costs of this action;

j. A declaratory judgment that the practices complained of herein are unlawful under the NYLL, NYSHRL and NYCHRL;

k. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

l. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated:  May 14, 2021                              Respectfully submitted,

                                             **BROWN KWON & LAM, LLP**

                           By:      */s/ Clara Lam*

                                             Clara Lam, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiffs*